**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
BABATUNDE ADEYEMI,              :
                               :
        Plaintiff,             :
                               :
v.                             :
                               :  Civil No. 3:24-cv-1835 (AWT)
STEPHEN FAZZINO,               :
                               :
        Defendant.             :
                               :
                               :
------------------------------- x
```

<u>**ORDER RE MOTION FOR SUMMARY JUDGMENT**</u>

For the reasons set forth below, defendant Stephen Fazzino's Motion for Summary Judgment (ECF No. 21) is hereby GRANTED in part and DENIED in part. Summary judgment is being granted in favor of the defendant with respect to the claim for negligent infliction of emotional distress (Third Count) and the motion is otherwise being denied.

**I.**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Gallo v. Prudential Residential Servs.</u>, 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry

-1-

of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . ." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine

-2-

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant . . . and draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (alteration in original)). Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine

issue of material fact exists. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," id., if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial," Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (emphasis, quotation marks and citations omitted). "Accordingly, unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

## II.

### A. First Count

The plaintiff makes two claims in the first count: the claim that the defendant violated his right under the Fourth Amendment to be free from unreasonable searches and seizures, and the claim that the defendant violated his right under the Fourteenth Amendment to equal protection.

With respect to the Fourteenth Amendment equal protection claim, the defendant argues:

that claim . . . fails because it is predicated upon the

-4-

> same conduct as his Fourth Amendment claim. "Where a
> specific constitutional provision prohibits government
> action, plaintiffs seeking redress for that prohibited
> conduct in a § 1983 suit cannot make reference to the broad
> notion of substantive due process." <u>Velez v. Levy</u>, 401 F.3d
> 75, 94 (2d Cir. 2005).

Def. Mem. in Supp. of Summ. J. (ECF No. 21-1) at 13.[1] However,

the plaintiff is not bringing a substantive due process claim.

The defendant also argues that the plaintiff has not

alleged "an equal protection claim for intentional

discrimination and/or selective enforcement and/or racial

profiling." Def. Reply in Supp. of Summ. J. (ECF No. 30) at 3.

However, even though the claim is not set forth in a separate

count, the plaintiff does allege in the First Count that he was

deprived of "[t]he enjoyment of equal protection of the law."

Compl. (ECF No. 1) at ¶ 9(h).

With respect to the Fourth Amendment claim, the defendant

maintains that he did not violate the plaintiff's Fourth

Amendment rights because he had probable cause to stop the

plaintiff's vehicle and since his stop of the plaintiff's

vehicle was lawful, he had the authority to request that the

plaintiff exit the vehicle. The defendant further contends that

> since the motor vehicle stop was authorized, and based on
> the information received by Officer Fazzino by the
> confidential informant concerning plaintiff's possible gang
> affiliation, combined with K9 Gage's alert on the car for

---

[1] With the exception of citations to deposition and hearing transcripts, the
page numbers cited to in this ruling for documents that have been
electronically filed refer to the page numbers in the header of the documents
and not to the page numbers in the original documents, if any.

> narcotics, Officer [Fazzino] could reasonably believe that
> the Plaintiff could have been armed and dangerous and
> reasonably conducted a Terry pat down on the plaintiff.

Def. Mem. in Supp. of Summ. J. at 11.

> "[A]n ordinary traffic stop constitutes a limited seizure
> within the meaning of the Fourth and Fourteenth Amendments
> [and] [a]ccordingly, such stops must be justified by
> probable cause or a reasonable suspicion, based on specific
> and articulable facts, of unlawful conduct." United States
> v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994). "[T]he decision
> to stop an automobile is reasonable where the police have
> probable cause to believe that a traffic violation has
> occurred." Whren v. United States, 517 U.S. 806, 810 . . .
> (1996). Further, under Maryland v. Wilson, 519 U.S. 408 . .
> . (1997), and Pennsylvania v. Mimms, 434 U.S. 106 . . .
> (1977), after lawfully stopping a car, a police officer may
> "as a matter of course" order the driver and passengers to
> exit the vehicle.

United States v. Oates, 514 F. Supp. 2d 221, 225 (D. Conn.

2007).

"Under the automobile exception, law enforcement 'may

conduct a warrantless search of a readily mobile motor vehicle

if probable cause exists to believe the vehicle contains

contraband or other evidence of a crime.'" Amigon v. Luzon, No.

21-CV-02029 (PMH), 2025 WL 1952581, at *5 (S.D.N.Y. July 16,

2025), reconsideration denied, No. 21-CV-02029 (PMH), 2025 WL

2792655 (quoting United States v. Gaskin, 364 F.3d 438, 456 (2d

Cir. 2004)). "[T]he use of a well-trained narcotics-detection

dog—one that 'does not expose noncontraband items that otherwise

would remain hidden from public view,' [U.S. v.] Place, 462 U.S.

[696, 707 (1983)]—during a lawful traffic stop, generally does

not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005). Thus, "[a]ny intrusion on respondent's privacy expectations" during a dog sniff "performed on the exterior of respondent's car while he was lawfully seized for a traffic violation" "does not rise to the level of a constitutionally cognizable infringement." Id.

"The police may conduct a Terry stop and thus 'briefly detain an individual for questioning' provided there is a 'reasonable suspicion' of criminal activity; if so, the police 'may frisk him if they reasonably believe he is armed and dangerous.'" United States v. Thomas, 519 F. Supp. 2d 283, 286 (D. Conn. 2007) (quoting United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007)). Reasonable suspicion "'is satisfied as long as authorities can point to specific and articulable facts which, taken together with rational inferences from those facts, . . . provide a particularized and objective basis for suspecting legal wrongdoing.'" Soukaneh v. Andrzejewski, 112 F.4th 107, 117 (2d Cir. 2024) (further internal quotation marks omitted) (quoting United States v. Patterson, 25 F.4th 123, 135-36 (2d Cir. 2022)).

With respect to the plaintiff's Fourth Amendment claim, after reviewing the deposition testimony of both the plaintiff and the defendant, the court concludes that genuine issues of material fact exist as to whether the defendant had probable

cause to believe a traffic violation had occurred and thus a lawful basis to stop the plaintiff. The court further concludes that genuine issues of material fact exist as to whether the defendant had a lawful basis for having the plaintiff exit the vehicle, probable cause for searching the vehicle, or reasonable suspicion for searching the plaintiff.

With respect to the plaintiff's Fourteenth Amendment claim, to establish a violation of the Equal Protection Clause based on selective enforcement, the plaintiff must show:

> (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995).

Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019). After reviewing the deposition testimony of both the plaintiff and the defendant, the court concludes that genuine issues of material fact exist as to whether the plaintiff was selectively treated and whether any such selective treatment was motivated by an intention to discriminate on the basis of an impermissible consideration, or by a malicious or bad faith intent to injure the plaintiff.

The defendant argues that he is entitled to summary judgment on the issue of qualified immunity. "Qualified immunity

applies unless (1) the official violated the plaintiff's statutory or constitutional right, and (2) that 'right was clearly established at the time of the challenged conduct.'" Eaton v. Estabrook, 144 F.4th 80, 90 (2d Cir. 2025) (further internal quotation marks omitted) (quoting Ricciuti v. Gyzenis, 834 F.3d 162, 167 (2d Cir. 2016)). In determining whether a right was clearly established at the time of the challenged conduct, the court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." Nat'l Rifle Ass'n of Am. v. Vullo, 144 F.4th 376, 390 (2d Cir. 2025) (citation omitted).

The defendant argues he is entitled to summary judgment because "Officer Fazzino did not violate any of the Plaintiff's constitutional rights." Def. Mem. in Supp. of Summ. J. at 16. However, as discussed above, genuine issues of material fact exist as to whether the defendant violated the plaintiff's constitutional rights with respect to both of the claims in the First Count. The defendant also argues that even if the facts show that he violated a constitutional right, he did not violate clearly established law. However, the right to be free from unreasonable search and seizure--as in this case, not to be stopped or have one's car searched absent probable cause or to

-9-

be searched absent reasonable articulable suspicion--was clearly established law well before this incident in 2023. See Matthews v. City of New York, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) ("[T]he law was clearly established that [plaintiffs] had . . . a constitutional right to be free from unreasonably prolonged or intrusive investigative detention.") (quoting Gilles v. Repicky, 511 F.3d 239, 247 (2d Cir. 2007)); see also Kuriakose v. City of Mt. Vernon, 41 F. Supp. 2d 460, 469 (S.D.N.Y. 1999) ("[T]he law on investigative stops was clearly established at the time of plaintiff's stop, and the officers should have known that such a stop required reasonable suspicion."); Signorile v. City of New York, 887 F. Supp. 403, 412 (E.D.N.Y. 1995) ("[C]learly established as constitutional rights are the prerogatives not to be arrested or searched, other than in a frisk grounded in reasonable suspicion, without probable cause.")); Aikman v. Cnty. of Westchester, 491 F. Supp. 2d 374, 384 (S.D.N.Y. 2007), on reconsideration in part, 691 F. Supp. 2d 496 (S.D.N.Y. 2010) ("'It is well established that a warrantless search is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' . . . While an individual's expectation of privacy in his automobile is reduced . . . motorists nevertheless cannot be subject to unreasonable searches.") (internal quotation marks omitted) (quoting McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997))

-10-

(citing City of Indianapolis v. Edmond, 531 U.S. 32 (2000)).

In addition, the right to be free from selective enforcement of the law based on race was clearly established law well before this incident in 2023. See Whren, 517 U.S. at 813 ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race.").

### B. Second Count

The Second Count is a common law claim for assault. "To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to her and that the application of force or violence was unlawful." Odom v. Matteo, 772 F. Supp. 2d 377, 395 (D. Conn. 2011) (quoting Williams v. Lopes, 64 F. Supp. 2d 37, 47 (D. Conn. 1999)).

After reviewing the deposition testimony, in particular the plaintiff's deposition testimony with respect to the search not being "a normal search," Pl.'s Ex. A, Babatunde Adeyemi Dep. Tr., Nov. 21, 2025 (ECF No. 29-1) at 51:4, the court concludes that genuine issues of material fact exist as to whether the application of force was unlawful. See Ochoa v. City of W. Haven, No. 3:08CV00024 DJS, 2011 WL 3267705, at *10, *7 (D. Conn. July 29, 2011) (denying a motion for summary judgment as to a claim of assault and battery and finding that "there are unresolved issues of fact as to whether the amount of force used

-11-

by the defendant Officers was objectively reasonable and thus lawful" where, <u>inter</u> <u>alia</u>, the plaintiffs asserted than an officer touched a plaintiff's "private parts . . . at least twice during the said search").

### C. <u>Third Count</u>

The Third Count is a claim for negligent infliction of emotional distress.

> The elements of a claim of negligent infliction of emotional distress in Connecticut are well-established: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." <u>Carrol v. Allstate Insurance Co.</u>, 262 Conn. 433, 444, 815 A.2d 119 (2003).

<u>Bahadosingh v. UAG Fairfield CM, LLC</u>, No. 3:17CV1177 (DJS), 2018 WL 11486470, at *3 (D. Conn. Aug. 1, 2008).

The parties agree that the defendant's actions were discretionary acts. The defendant argues that he is entitled to qualified immunity with respect to this claim. The defendant is entitled to qualified immunity, but not pursuant to Connecticut General Statutes 52-557n(a)(2)(B), as he argues at page eighteen of his memorandum. Rather, as explained in <u>Borelli v. Renaldi</u>:

> "The [common-law] doctrines that determine the tort liability of municipal employees are well established. ... Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. ... Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary

-12-

in nature. ... The hallmark of a discretionary act is that it requires the exercise of judgment. ... In contrast, [a ministerial act] refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. ...

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. ... Discretionary act immunity reflects a value judgment that— despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. ... In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. ... This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts. . . .

Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

336 Conn. 1, 10-11 (2020) (quoting Violano v. Fernandez, 280 Conn. 310, 318–20 (2006)).

The Connecticut Supreme Court "has recognized three exceptions to governmental immunity, each of which, when proven, demonstrates that 'despite the discretionary nature of the officer's acts or omissions, the officer's duty to act was clear and unequivocal so as to warrant imposing liability on the

municipality." Id. at 28 (quoting Edgerton v. Clinton, 311 Conn. 217, 230 n.13 (2014)). The three exceptions are "the identifiable victim-imminent harm exception" id.; "where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and . . . where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." Id. at n.14 (citation omitted).

The plaintiff contends that the malice, wantonness, or intent to injure and the identifiable victim-imminent harm exceptions to discretionary acts immunity apply in this case.

The plaintiff argues that the defendant's actions "involve malice, wantonness or intent to injur[e], rather than negligence." Pl. Mem. in Opp. to Summ. J. (ECF No. 29) at 21. However, the claim in the Third Count is a claim for negligent infliction of emotional distress, not intentional infliction of emotional distress, so that exception to discretionary act immunity cannot apply.

The identifiable victim-imminent harm exception applies "when 'the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . .'" Doe v. Petersen, 279 Conn. 607, 616 (2006) (quoting Evon v. Andrews, 211 Conn. 501, 505 (1989)). The exception "requires three things: (1) an

-14-

imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Id. A series of Connecticut Supreme Court cases in which the fact pattern involves a failure to act (as opposed to affirmative conduct) have used this formulation of the exception. See, e.g., Edgerton, 311 Conn. at 234-36 (the plaintiff alleged that an emergency dispatcher failed to act to stop a vehicle pursuit); Haynes v. City of Middletown, 314 Conn. 303, n.8 (2014) ("The plaintiffs alleged that the defendant had been negligent in failing to supervise the students and there was evidence that the school knew that students engaged in horseplay in the locker room."); Strycharz v. Cady, 323 Conn. 548, 557-58 (2016) (the plaintiff alleged that school officials failed to take steps to make a nearby traffic intersection safe for students); Martinez v. City of New Haven, 328 Conn. 1, 5 (2018) (the plaintiff alleged that the defendants failed to supervise students, inspect the premises, and remove the dangerous object that caused the plaintiff's injuries); Brooks v. Powers, 328 Conn. 256, 272 (2018) (the plaintiff alleged that the defendants failed "to immediately investigate the . . . report that a woman was standing in a field during the storm, possibly in need of medical attention"). But see Borelli, 336 Conn. at 167 (in a case where police officers decided to initiate a high-speed

-15-

pursuit of a vehicle and a passenger in the vehicle was killed when it crashed, the issue on appeal was the identifiable person element of the exception, so the majority opinion did not address failure to act, but the dissent was of the view that the exception was appropriate for "the officer's affirmative conduct"); Belanger v. City of Hartford, 578 F. Supp. 2d 360, 367 (D. Conn. 2008) ("Notably, the third part of the test refers to an official's 'conduct' and does not specify that the officer must have failed to act."); Odom, 772 F. Supp. 2d at 395 (citing to Connecticut Superior Court cases holding that "where . . . an officer is alleged to have used excessive force against a person, he may be found to have subjected an identifiable person to imminent harm and therefore is not protected from suit by the doctrine of governmental immunity"); Holeman v. City of New London, 330 F. Supp. 2d 99, 106-08, 118-19 (D. Conn. 2004) (finding the identifiable person-imminent harm exception could apply where the plaintiffs claimed that defendant police officers were negligent in using physical force on the plaintiff's decedent during a police stop); Taylor v. City of Middletown, 436 F. Supp. 2d 377, 379-81, 388-89 (2006) (denying summary judgment under the identifiable person-imminent harm exception where the plaintiffs claimed that defendant police officers were negligent in lobbing a flash-bang explosive device in their direction, physically injuring the plaintiffs, when

-16-

executing a search warrant of the plaintiffs' home); Galindez v. Miller, 285 F. Supp. 2d 190, 194-95 (2003) (denying a motion to dismiss under the identifiable victim-imminent harm exception where the plaintiff claimed that defendant police officer negligently used physical force in arresting the plaintiff); Keeney v. City of New London, 196 F. Supp. 2d 190, 202 (2002) (denying summary judgment on the identifiable victim-imminent harm exception where the plaintiff claimed that defendant officers were negligent in using physical force on the plaintiff's decedent after the decedent was handcuffed).

The plaintiff asserts that the "plaintiff was a clearly identifiable individual to the defendant, and he was put at risk from defendant's willful actions." Pl. Mem. in Opp. to Summ. J. at 21. This exception has its origins in failure to act and the Connecticut Supreme Court has never stated that it has been expanded beyond that to affirmative acts. The plaintiff has not alleged a failure to act by the defendant, so the court concludes that the identifiable victim-imminent harm exception does not apply.

Because neither the malice, wantonness, or intent to injure nor the identifiable victim-imminent harm exceptions to discretionary acts immunity apply in this case, the defendant's motion for summary judgment is being granted with respect to the claims in the Third Count.

-17-

## III.

For the reasons set forth above, the defendant's Motion for Summary Judgment is being denied with respect to the claims in the First and Second Counts and granted in favor of the defendant with respect to the claim in the Third Count.

It is so ordered.

Dated this 1st day of July 2026, at Hartford, Connecticut.

_____
/s/AWT
Alvin W. Thompson
United States District Judge
